## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ISAAC KENNETH FULLMAN,** | : | **Civil No. 4:12-CV-2063** |
| | : | |
| **Plaintiff** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CENTRE COUNTY CORRECTIONAL** | : | |
| **FACILITY, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This action is one of seven cases[1] recently filed by a *pro se* plaintiff, Isaac

Fullman.  In the instant lawsuit Fullman has named one institutional defendant, the

Centre County Correctional Facility, and five individual corrections officials, Jeffrey

Hite, Michael Woods, Jeanna Ananea, John Perryman and M. Gordon.  Of these five

individual defendants, two–defendants Hite and Perryman– are listed in the caption

of the case but are not discussed in the body of this complaint.  Defendants Ananea

and Gordon, in turn, are identified as correctional supervisors, lieutenants, whose sole

---

[1]Fullman v. Patton Township Police Dep't., 4:12-CV-1879; Fullman v. Penn State University Police Dep't., 4:12-CV-1880; Fullman v. Centre County District Attorney's Office, 4:12-CV-1881; Fullman v. State College Borough Police Dep't., 4:12-CV-1882; Fullman v. Ferguson Township Police Dep't., 4:12-CV-1883; Fullman v. Centre County District Attorney's Office, 4:12-CV-12061; Fullman v. Centre County Prison, 4:12-CV-2063.

involvement in the matters set forth in the complaint seems to be that they failed to act favorably on grievances lodged by Fullman.

Fairly construed, Fullman's latest complaint levels a series of allegations relating to the conditions of his confinement at the Centre County Prison. First, Fullman's complaint advances a claim that he was excessively punished for these crimes, in that his jailers improperly held him in custody some 13 days beyond his mandatory release date. While Fullman's complaint levels this accusation of excessive confinement, he does not identify who may be responsible for this action, beyond simply naming the "Centre County Correctional Facility" as a defendant in this particular civil rights claim.

Fullman then asserts four other broadly framed claims. Two of these claims involve allegations by Fullman that he is owed money or property by the prison. Specifically, Fullman alleges that when he arrived at the prison, "I had a pair of black tube socks that came up missing and the administration said that since they were not on record, they could not be replace[d]." According to Fullman, "I would like to sue for this and I would like my black tube socks replaced." Fullman then advances a second, series of $1.00 per day deprivation of property claims, alleging that he was employed at the prison in a job that paid $1.00 per day. According to Fullman he worked from April 2 through April 23, 2012, and turned his time card in to defendant Woods, but did not get paid for this work, allegedly because he failed to timely

submit a "time sheet," an allegation Fullman denies. Fullman recites that he pursued post-deprivation remedies on this issue, lodging grievances with defendants Ananea, Gordon, and with an uncharged prison supervisor Deputy Warden McClellan, but his grievances were denied. This unfavorable resolution of inmate Fullman's grievances seems to be the sole factual allegation made agianst defendants Ananea and Gordon.

Fullman then raises what he refers to as "hygenticial concerns," stating that he had to wait seven days before receiving some personal hygiene products and specifically alleging that, as an indigent inmate, he had to wait seven days before receiving shampoo, tooth paste and a tooth brush. Finally, in his complaint, Fullman makes what we will liberally construe as an access to the courts claim, complaining that the county jail law library and computer resources are inadequate. On the basis of these claims, Fullman, who states that he is no longer housed in the Centre County prison, seeks injunctive relief, along with nominal, compensatory and punitive damages.

Along with his complaint, Fullman has sought leave to proceed *in forma pauperis*. While we will grant Fullman's motion for leave to proceed *in forma pauperis*, (Doc.2.), as part of our legally-mandated screening of *pro se*, *in forma pauperis* cases, we have carefully reviewed this complaint, and conclude that, in its current form, the complaint fails to state a claim upon which relief can be granted.

Accordingly, for the reasons set forth below, it is recommended that the complaint be dismissed.

## II. <u>Discussion</u>

### A. <u>Screening of *Pro Se* Complaints–Standard of Review</u>

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which seek redress against government officials. <u>See</u> 28 U.S.C. § 1915(e)(2)(B)(ii). Specifically, the Court must assess whether a *pro se* complaint fails to state a claim upon which relief may be granted, since Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." <u>Id.</u> at 555. "Factual allegations must be enough to raise a right

to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the

pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

Judged against these standards. Fullman's *pro se* complaint is flawed in the following six fundamental respects.

**B.     Fullman's Requests for Injunctive relief Are Moot Since He States That He is No Longer Incarcerated**

At the outset, in this complaint Fullman alleges that he seeks injunctive relief against his former jailers. Fullman makes this request for injunctive relief, even though he states that he now lives in Philadelphia and is no longer housed in the Centre County Jail. Fullman's request for injunctive relief, therefore, runs afoul of a basic legal tenet. In general, an inmate-plaintiff's transfer to another prison, or his release, moots a request for declaratory or injunctive relief from prison officials. See, e.g., Bronson v. Overton, Civ. A. No. 08-52E, 2010 U.S. Dist. LEXIS 60003, at *1 n.1 (E.D. Pa. May 27, 2010); Fortes v. Harding, 19 F. Supp. 2d 323, 326 (M.D. Pa. 1998) ("Fortes' transfer to another institution moots any claims for injunctive or declaratory relief."). Indeed, as this court has previously observed, in a case such as

this, where a former inmate seeks injunctive relief against his jailers but is later removed from the prison where these injunctive claims arose:

> [H]is request[] to enjoin the defendants from interfering with his [rights] is academic. <u>See Muslim v. Frame</u>, 854 F.Supp. 1215, 1222 (E.D.Pa.1994). In other words, [the prisoner-plaintiff's] transfer to another institution moots any claims for injunctive or declaratory relief. <u>See Abdul-Akbar v. Watson</u>, 4 F.3d 195, 206-07 (3rd Cir.1993); <u>Weaver v. Wilcox</u>, 650 F.2d 22, 27 (3rd Cir.1981).

> <u>Fortes v. Harding</u>, 19 F.Supp.2d 323, 326 (M.D.Pa.1998).

As the United States Court of Appeals for the Third Circuit has observed in addressing inmate requests for injunctive relief:

> As a preliminary matter, we must determine whether the inmates' claims are moot because "a federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." <u>Preiser v. Newkirk</u>, 422 U.S. 395, 401 (1975) (quotations omitted); <u>see also</u> <u>Abdul-Akbar v. Watson</u>, 4 F.3d 195, 206 (3d Cir.1993). An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims. <u>Abdul-Akbar</u>, 4 F.3d at 197 (former inmate's claim that the prison library's legal resources were constitutionally inadequate was moot because plaintiff was released five months before trial).

> <u>Sutton v. Rasheed</u>, 323 F.3d 236, 248 (3d Cir. 2003).

These principles control here, and compel dismissal of this injunction action as moot at this time since Fullman is no longer housed at the Centre County Jail and there is no indication that he will be housed at that facility in the foreseeable future.

## C. Fullman Has Failed to State Viable Claims Against Defendants Hite, Ananea, Perryman and Gordon

Fullman has also leveled claims against four individual supervisory defendants in his complaint, but his legal and factual support for those claims is both sparse and inadequate. Thus, two of the individual supervisory defendants, defendants Hite and Perryman, are listed in the caption of the case but are not discussed in the body of this complaint. Defendants Ananea and Gordon, in turn, are identified as correctional supervisors, lieutenants, whose sole involvement in the matters set forth in the complaint seems to be that they failed to act favorably on grievances lodged by Fullman. In their current form, these supervisory liability claims clearly fail as a matter of law. In considering claims brought against supervisory officials arising out of alleged constitutional violations, the courts recognize that supervisors may be exposed to liability only in certain, narrowly defined, circumstances.

At the outset, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was a prison supervisor when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal

involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice.   Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

"A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties").  Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution

Ashcroft v. Iqbal,  129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F. App'x 178, 181 (3d Cir. 2006).

Here, as to these four supervisory defendants, Fullman does not allege that the defendants directed the conduct complained of by the plaintiff, or had knowledge of that conduct and acquiesced in it. Rather, in the first instance, with respect to defendants Hite and Perryman, Fullman simply lists them in the caption of his complaint without making any factual averments about their conduct in the body of his complaint. This cursory style of pleading is plainly inadequate to state a claim against a prison supervisor and compels dismissal of these defendants. Hudson v. City of McKeesport, 241 F. App'x 519 (3d Cir. 2007)(affirming dismissal of defendant who was only named in caption of case.)

Nor can an inmate, like Fullman, sustain constitutional claims against a prison supervisor based solely upon assertions that this official failed to adequately respond

to his past grievances. Inmates do not have a constitutional right to a prison grievance system. See Jones, 433 U.S. at 137-138; Speight v. Sims, No. 08-2038, 283 F. App'x 880, 2008 WL 2600723 at *1 (3d Cir. June 30, 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.").  Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).  See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern.").  As the United States Court of Appeals for the Third Circuit recently observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system. The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior* ); see also Antonelli v. Sheahan,

> 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures
> do not give rise to a liberty interest protected by the Due Process Clause)

Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

Indeed, as to such claims, the United States Court of Appeals for the Third Circuit has recently held that summary dismissal is appropriate "because there is no apparent obligation for prison officials to investigate prison grievances. See Inmates of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 382 (2d Cir.1973)." Paluch v. Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir. 2011). In this case, fairly construed, Fullman's claims against defendants Ananea and Gordon presently consist of little more than assertions of *respondeat superior* liability, coupled with dissatisfaction with their processing of this inmate's past grievances, assertions which as a matter of law do not suffice to state a constitutional tort claim. Therefore, these defendants are also entitled to be dismissed from this case.

### D.    Fullman's Access to the Courts Claim Fails

Fullman has also leveled what we liberally construe as a claim that he was denied access to the courts due to alleged deficiencies in the prison law library. While he complains about these facilities, Fullman identifies no prejudice to any litigation that he has suffered as a result of this limited law library, and it appears that Fullman has been able to successfully file and prosecute seven separate lawsuits. Fullman faces an exacting burden in advancing a claim that he was denied access to

the courts. Since 1977, the United States Supreme Court has recognized that inmates have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817 (1977). As the Supreme Court initially observed, this right of access to the courts is satisfied when corrections officials facilitate "meaningful" access for those incarcerated, either through legal materials or the assistance of those trained in the law. Id. at 827 ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.")

Two decades later, in 1996, the Supreme Court provided further definition and guidance regarding the scope and nature of this right of access to the courts in Lewis v. Carey, 518 U.S. 343 (1996). In Lewis, the Court eschewed efforts to define this right in abstract, or theoretical terms, but rather cautioned courts to focus on concrete outcomes when assessing such claims. As the Court observed:

> Because Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's . . . legal assistance program is subpar in some theoretical sense. . . . Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," id., at 823, 97 S.Ct., at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the . . . legal assistance program hindered his efforts to pursue a legal claim. . . . . Although Bounds itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite.

And actual injury is apparent on the face of almost all the opinions in the 35-year line of access-to-courts cases on which <u>Bounds</u> relied, <u>see id.</u>, at 821-825, 97 S.Ct., at 1494-1497. Moreover, the assumption of an actual-injury requirement seems to us implicit in the opinion's statement that "we encourage local experimentation" in various methods of assuring access to the courts. <u>Id.</u>, at 832, 97 S.Ct., at 1500.

<u>Lewis v. Casey</u>, 518 U.S. 343, 351-52 (1996).

Thus, following <u>Lewis</u> courts have consistently recognized two guiding principles which animate access-to-court claims by prisoners. First, such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. <u>See, e.g., Oliver v. Fauver</u>, 118 F.3d 175 (3d Cir. 1997); <u>Demeter v. Buskirk</u>, No. 03-1005, 2003 WL 22139780 (E.D. Pa. Aug. 27, 2003); <u>Castro v. Chesney</u>, No. 97-4983, 1998 WL 150961 (E.D. Pa. March 31, 1998). Moreover, consistent with the Supreme Court's express view that " 'we encourage local experimentation' in various methods of assuring access to the courts," <u>Lewis v. Casey</u>, 518 U.S. at 352, courts have long recognized that public officials can provide meaningful access to the courts through a wide variety of means.

In this case, Fullman simply has not shown actual concrete prejudice to him in the litigation of a particular case, the essential prerequisite to a constitutional claim in this setting. Quite the contrary, the record affirmatively reveals that Fullman has been an active, indeed a prolific litigator, who has filed numerous pleadings without any apparent delay or outside impediment. Given this undisputed factual background,

in the absence of other well-pleaded facts demonstrating some actual concrete prejudice to the litigation of some particular case, this access-to-courts claim also fails, and should be dismissed.

### E. Since Fullman Alleges That He was Afforded Post-Deprivation Remedies, His Property Loss Due Process Claims Fail

Fullman has also articulated two claims which appear to involve allegations by Fullman that he is owed money or property by the prison. Initially, Fullman alleges that when he arrived at the prison, "I had a pair of black tube socks that came up missing." According to Fullman, "I would like to sue for this and I would like my black tube socks replaced." Fullman then advances a second, series of $1.00 per day property deprivation claims, alleging that he was employed at the prison in a job that paid $1.00 per day. According to Fullman he worked from April 2 through April 23, 2012, and turned his time card in to defendant Woods, but did not get paid for this work, allegedly because Officer Woods stated that he failed to timely submit a "time sheet," an allegation Fullman denies.

While Fullman advances these two property deprivation claims, his complaint affirmatively reveals that he was afforded, and exercised, post-deprivation remedies within the prison system with respect to these matters. For example, with respect to his prison pay dispute, Fullman recites that he pursued post-deprivation remedies on this issue, lodging grievances with defendants Ananea, Gordon, and with an

uncharged prison supervisor, Deputy Warden McClellan, but his grievances were denied. Similarly, Fullman's complaint reveals that he raised the issue of his missing black tube socks with the prison administration and states that " the administration said that since they were not on record, they could not be replace[d]."

The existence of these post-deprivation remedies is fatal to these particular constitutional claims. Inmate due process claims arising out of the confiscation or loss of property are judged against settled legal standards, standards which recognize that:

> Like other constitutional rights, the Due Process rights of prisoners may be accommodated to a prison's legitimate security needs. See Bell v. Wolfish, 441 U.S. 520, 558-60, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). [Therefore] "[A]n unauthorized intentional deprivation of property" by prison officials does not violate the Due Process Clause "if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)(citing Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). Pre-deprivation notice is not constitutionally required. See id.

Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008).

Thus, there are two crucial component to any inmate due process claim in this setting: (1) the loss or confiscation of property; *and* (2) an allegation that property was taken and the prisoner was afforded no post-deprivation administrative remedy. Id. Here, Fullman's claims fail on the second essential element of this constitutional claim since his pleadings affirmatively described meaningful post-deprivation remedies that

were afforded to the plaintiff.  The existence of these remedies, and Fullman's reliance on these remedies, defeats this particular claim on its merits.

### F.     Fullman Has Not Stated an Eighth Amendment Conditions of Confinement Claim

Fullman's complaint also attempts to state what we construe as an Eighth Amendment conditions of confinement claim, describing what he refers to as "hygenticial concerns," and stating that,  as an indigent inmate, he had to wait seven days before receiving some personal hygiene products like shampoo, tooth paste and a tooth brush.  These Eighth Amendment claims are judged against settled legal principles, principles which set precise and exacting standards for asserting a constitutional infraction, and are governed by the same overarching and animating constitutional benchmarks.  As the United States Court of Appeals for the Third Circuit has observed:

> The Eighth Amendment protects against infliction of "cruel and unusual punishment." However, "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Id. (citation and internal quotations omitted). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id.

Resolution of an Eighth Amendment claim therefore "mandate[s] an inquiry into a prison official's state of mind." Wilson v. Seiter, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Two considerations define that inquiry. We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. Id. at 298, 111 S.Ct. 2321. If not, our inquiry is at an end. However, if the deprivation is sufficiently serious, we must determine if the officials acted with a sufficiently culpable state of mind. Id. In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain. "What is necessary to establish an 'unnecessary and wanton infliction of pain ...' varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Fuentes v. Wagner, 206 F.3d 335, 344-45 (3d Cir. 2000)

These same guiding principles apply to inmate complaints regarding their conditions of confident.  "When an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, we must determine if prison officials acted with 'deliberate indifference' to the inmate's health.  Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The objective inquiry is whether the inmate was 'denied the minimal civilized measure of life's necessities.' Hudson, 503 U.S. at 9, 112 S.Ct. 995." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000). In this setting, it is clear that:

The Eighth Amendment prohibits punishments inconsistent with "evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)). Conditions of prison confinement violate the Eighth Amendment only if they "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S.

337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)

Atkinson v. Taylor, 316 F.3d 257, 272 (3d Cir. 2003).

Thus, these claims require proof of a both culpable state of mind, and objective proof of physical conditions of confinement which shock the conscious and depart from minimal civilized standards of life's necessities.

Applying these benchmarks, courts have repeatedly held that complaints, like those made here by Fullman, which rest upon a brief alleged failure to provide personal hygiene supplies to a prisoner do not state a claim under the Eighth Amendment. See e.g., Banks v. Mozingo, 423 F.App'x 123 (3d Cir. 2011)(denying inmate hygiene complaint as ironic where inmate engaged in un-hygienic behavior, including smearing feces on cell); Adderly v. Ferrier, 419 F.App'x 135 (3d Cir. 2011)(denying inmate claim involving 7 day alleged denial of hygienic material); Fortune v. Hamberger, 379 F.App'x 116 (3d Cir. 2010)( denying inmate claim involving 15 day alleged denial of hygienic material); Benjamin v. Fraser, 161 F.Supp.2d 151, 177 (S.D.N.Y.2001) (two days without feminine hygiene products and toilet paper did not establish a constitutional violation); Stead v. Skinner, 10-4526, 2011 WL 3882809, *4 (N.D.Ill., Sept 2, 2011). Therefore, this claim, as stated, also fails on its merits and should be dismissed.

## G. The County Prison Is Not a Proper Defendant in an Eighth Amendment Excessive Confinement Claim

Finally, in his latest lawsuit, Fullman advances an excessive confinement claim, alleging that his jailers have held him 13 days beyond his mandatory release date. Liberally construed, this allegation states a potentially viable Eighth Amendment claim. In this regard, the requisites for an excessive confinement claim are as follows:

> In the context of an Eighth Amendment claim for incarceration without penological justification, this Court has held that a plaintiff must demonstrate three elements to establish § 1983 liability against a *prison official*: (1) a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) a causal connection between the official's response to the problem and the unjustified detention. <u>Sample</u>, 885 F.2d at 1110. Relevant circumstances in assessing these factors are the scope of the official's duties and the role the official played in the life of the prison. <u>Id.</u>

<u>Montanez v. Thompson</u>, 603 F.3d 243, 252 (3d Cir. 2010)(emphasis added).

Yet, while he states a potentially viable claim, Fullman fails to name a proper defendant on this claim. With respect to this excessive confinement claim, Fullman's complaint seems to only name the Centre County Correctional Facility as a defendant. Fullman, however, may not maintain a prisoner civil rights action against the county prison as an institution. Rather, inmate civil irghts actions under 42 U.S.C. §1983 may be brought against: "Every *person* who, under color of any statute, ordinance,

regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983 (emphasis added). Thus, §1983 limits liability to persons who violate constitutional rights, a limitation that courts have construed as not reaching county jails as institutions. In short, " the 'County Jail' is not a proper defendant in this § 1983 case[], because it is not a 'person.' See Grabow v. Southern State Correctional Facility, 726 F.Supp. 537, 538-39 (D.N.J.1989)(stating that New Jersey Department of Corrections and state prison facilities not "persons" under § 1983); Mitchell v. Chester County Farms Prison, 426 F.Supp. 271, 274 (D.C.Pa.1976); see also Marsden v. Federal BOP, 856 F.Supp. 832, 836 (S.D.N.Y.1994) (county jail not an entity amenable to suit under 42 U.S.C. § 1983); Powell v. Cook County Jail, 814 F.Supp. 757, 758 (N.D.Ill.1993) (Cook County Jail not a 'person' under § 1983); McCoy v. Chesapeake Correctional Center, 788 F.Supp. 890, 893-94 (E.D.Va.1992) (local jail not a 'person' under § 1983)." Crooks v. Passaic County Sheriff's Dep't/Jail, CIV. 07-0092 (FSH), 2007 WL 923330 (D.N.J. Mar. 26, 2007). See also, Thomas v. Wilbert, CIV.A. 09-4796 GEB, 2011 WL 91001 (D.N.J. Jan. 11, 2011)("County Correctional Institution is not a proper defendant in a § 1983 case and must be dismissed from this action").

This limitation on the reach of proper defendants in an Eighth Amendment excessive confinement claim compels dismissal of Fullman's execssive confinemnt claim, as stated in his *pro se* complaint, with respect to the county jail, which is not a proper defendant in a civil rights action brought under §1983.[2]

### G.    The Complaint Should be Dismissed Without Prejudice

In closing, we note that a number of the defects cited in this Report and Recommendation may potentially be remedied through the filing of an amended complaint and we recognize that *pro se* plaintiffs should be afforded an opportunity to amend a complaint before the complaint is dismissed with prejudice, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case, Fullman has not currently alleged facts that would state a claim upon which relief may be granted against the named defendants. Nonetheless, out of an abundance of caution, and in order to preserve the plaintiff's rights, it is recommended that this matter be dismissed without prejudice to Fullman attempting to amend this federal complaint to state a

---

[2]Rather, the courts have typically confined these claims to the specific individual parole or prison officials who actually executed an inmate's sentence, or erroneously calculated the inmate's release date. See e.g., Montanez v. Thompson, 603 F.3d 243, 252 (3d Cir. 2010); Moore v. Tartler, 986 F.2d 682, 686 (3d Cir.1993); Sample v. Diecks, 885 F.2d 1099, 1107-08 (3d Cir.1989).

claim upon which relief may be granted in federal court, by including proper allegations that meet the requirements of federal law.

Finally, we note that Fullman has also filed a motion requesting the appointment of counsel. (Doc. 3.) With respect to the appointment of counsel, it is clear that, in this setting, there is neither a constitutional nor a statutory right to counsel for *pro se* civil litigants. Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997); Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993). Notwithstanding this lack of a constitutional or statutory right to appointed counsel, in a civil case, 28 U.S.C. § 1915(e)(1) provides that "[t]he court may request an attorney to represent any person unable to employ counsel." A district court's appointment of counsel pursuant to this statute is discretionary and must be made on a case-by-case basis. Tabron, 6 F.3d at 157-58. The exercise of this discretion, however, is guided by certain basic principles. Gordon v. Gonzalez, 232 F. App'x 153, 156 (3d Cir. 2007). In Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997), the United States Court of Appeals for the Third Circuit outlined the standards to be considered by courts when reviewing an application to appoint counsel pursuant to 28 U.S.C. § 1915(e)(1). In passing on such requests we must first:

> "[D]etermine[] that the plaintiff's claim has some merit, then [we] should consider the following factors: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the

testimony of expert witnesses; [and] (6) whether the plaintiff can attain and afford counsel on his own behalf."

Parham v. Johnson, 126 F.3d at 457.

There is yet another practical consideration which must be taken into account when considering motions for appointment of counsel. As the United States Court of Appeals for the Third Circuit has aptly observed:

> Finally, in addressing this issue, we must take note of the significant practical restraints on the district courts' ability to appoint counsel: the ever-growing number of prisoner civil rights actions filed each year in the federal courts; the lack of funding to pay appointed counsel; and the limited supply of competent lawyers who are willing to undertake such representation without compensation. We have no doubt that there are many cases in which district courts seek to appoint counsel but there is simply none willing to accept appointment. It is difficult to fault a district court that denies a request for appointment under such circumstances.

Tabron v. Grace, 6 F.3d 147, 157 (3d Cir. 1993). Mindful of this consideration it has been "emphasize[d] that volunteer lawyer time is extremely valuable. Hence, district courts should not request counsel under § 1915(d) indiscriminately. As the Court of Appeals for the Second Circuit has warned: 'Volunteer lawyer time is a precious commodity.... Because this resource is available in only limited quantity, every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause. We cannot afford that waste.'

Cooper v. A. Sargenti Co., 877 F.2d 170, 172 (2d Cir.1989)." Tabron v. Grace, 6 F.3d 147, 157 (3d Cir. 1993).

Here Fullman's request for appointment of counsel runs afoul of the threshold matter we must consider in cases of this type, the requirement that we must first "determine[] that the plaintiff's claim has some merit." Parham v. Johnson, 126 F.3d at 457. Our screening review of Fullman's *pro se* complaint has led us to conclude that this complaint lacks merit. Given that Fullman has not met this threshold showing justifying the discretionary appointment of counsel, his request for appointment of counsel should be denied at this time, without prejudice to further consideration of this issue as this litigation progresses.

## III.    Recommendation

Accordingly, for the foregoing reasons, the plaintiff's motion for leave to proceed *in forma pauperis* is GRANTED, (Doc. 2.), the plaintiff's motion for appointment of counsel is DENIED, (Doc. 3.), and IT IS RECOMMENDED that the plaintiff's complaint be dismissed for the failure to state a claim upon which relief can be granted, but that the dismissal of this action be without prejudice to any effort by Fullman to timely allege facts in an amended complaint which might state a claim upon which relief may be granted, provided that Fullman files an amended complaint within 20 days of the entry of any dismissal order.

The plaintiff is further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 18th day of October 2012.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge